GEORGE W. ENNIS and ANNANIAS ENNIS

*vs.*

JOHN GINN, and ROBERT L. ARMSTRONG, Sheriff.

New Castle, Feb. T. 1877.

*Usury ; relief in equity.*

Where the statute avoids loans for usury, equity will, at the suit of the
  borrower, restrain the collection of the usurious interest, provided
  the borrower pays the principal of the debt and lawful interest
  thereon; but it will not, at the suit of the borrower, declare the whole
  contract void, although it would do so if it were sought to be affirm-
  atively enforced by the lender by suit in equity.

BILL TO RESTRAIN THE ENFORCEMENT OF A JUDGMENT ON A
USURIOUS DEBT.—It appears that on the 19th day of March,
1866, George W. Ennis negotiated with John Ginn for the
loan of $200. Ginn took, as the evidence and security for
said loan, a bond bearing date the same day, in the penal sum
of $400, conditioned for the payment of $200 on or before
the 19th day of December thereafter, with interest from date.
Annanias Ennis executed the bond at the same time as surety
for George W. Ennis. Judgment was entered on the bond
by virtue of a warrant of attorney thereto annexed. The
plaintiff in the judgment caused a writ of *fieri facias* to be
issued thereon to the November Term, 1873, of the Superior
Court of New Castle County. Under this writ, Armstrong,
the sheriff, levied on the goods and chattels of the said George
W. Ennis, and notified him that he would advertise the same
for sale.

The bill is filed to restrain Ginn and the sheriff from fur-
ther proceeding in the execution of said writ, on the ground,
as the complainants allege, that said loan was made on a
usurious consideration, to wit, for 10 per cent per annum.

The bill also states that the debt has been fully paid.

*Charles B. Lore* for complainants.
*George B. Rodney* for defendants.

THE CHANCELLOR.—The doctrine of courts of equity upon the subject of usurious contracts has never been more clearly and correctly stated than by Judge Story in his Commentaries, §§ 301, 302; and this will justify the citation of these sections in full:

"§ 301. In cases of usury this distinction has been adopted by courts of equity: All such contracts being declared void by the statute against usury, courts of equity will follow the law in the construction of the statute. If, therefore, the usurer or lender come into a court of equity seeking to enforce the contract, the court will refuse any assistance, and repudiate the contract. But, on the other hand, if the borrower comes into a court of equity seeking relief against the usurious contract, the only terms upon which the court will interfere are that the plaintiff will pay the defendant what is really and *bona fide* due to him,—deducting the usurious interest,—and if the plaintiff do not make such offer in his bill, the defendant may demur to it, and the bill will be dismissed. The ground of this distinction is that a court of equity is not positively bound to interfere in such cases by an active exertion of its powers; but it has a discretion on the subject, and may prescribe the terms of its interference; and he who seeks equity at its hands may well be required to do equity. And it is against conscience that the party should have full relief, and at the same time pocket the money loaned, which may have been granted at his own mere solicitation; for then a statute made to prevent fraud and oppression would be made the instrument of fraud. But in the other case, if equity should relieve the lender, who is plaintiff, it would be aiding a wrongdoer who is seeking to make the court the means of carrying into effect a transaction manifestly wrong and illegal in itself.

"§ 302. And, upon the like principles, if the borrower has paid the money upon an usurious contract, courts of equity (and indeed courts of law also) will assist him to recover back the excess paid beyond principal and lawful interest, but not further; for it is no just objection to say that he is *particeps*

*criminis,* and that *volenti non fit injuria.* It would be absurd to apply the latter maxim to the case of a man who, from mere necessity, pays more than the other can in justice demand, and who has been significantly called ' the slave of the lender.' He can in no just sense be said to pay voluntarily; and as to being *particeps criminis,* he stands *in vinculis,* and is compelled to submit to the terms which oppression and his necessities impose on him. Nor can it be said, in any case of oppression, that the party oppressed is *particeps criminis;* since it is that very hardship which he labors under, and which is imposed upon him by another, that makes the crime."

In this case the complainant has produced receipts which purport to be executed by the defendant, the aggregate amount of which fully pay the debt, and interest and costs, on the judgment and execution, if the interest be computed at 6 per cent per annum, and has proved by several witnesses that the signature to said receipt was in the proper handwriting of John Ginn, one of the defendants.

All those receipts are for interest amounting to $20 a year, and the last one, in addition thereto, for the sum of $200 in full of the bond.

All receipts refer to a bond, and not to a judgment; but it is proved by one of the witnesses that, when the last receipt was executed, Ginn said he would go to New Castle and settle it; which evidently referred to the judgment entered at New Castle. One of the witnesses also testified that Ennis remarked to his wife in the presence and hearing of Ginn, at the same time or immediately after, that he had paid that bond to Ginn.

The answer of Ginn denies the execution of receipts and the payment of the debt, but does not deny or admit the usurious consideration alleged.

There may be some reason for suspicion in respect to the execution of the last receipt; but that execution is as positively proved as the execution of the first three receipts. No witness was produced by the defendant in respect to the handwriting purporting to be his, in respect thereto.

The character of the witnesses for the complainants has not been impugned or attempted to be impugned.

The objection was made in the argument, that all receipts except the last purported to be for interest and not for principal, and therefore could not be considered as payments in part of principal, even if said receipts were genuine and not forgeries, as contended on the part of the defendant. But this defense cannot avail, for the reason that no forgery has been proved or attempted to be proved.

If it be true, as Judge Story says, "that if the borrower has paid the money upon a usurious contract, courts of equity (and indeed courts of law also) will assist him to recover back the excess paid beyond principal and lawful interest," *a fortiori* courts of equity will restrain the lender from collecting a greater amount than principal and lawful interest.

Computing, therefore, interest at the rate of 6 per cent per annum on the money lent, the payments which appear to have been made exceed the debt, interest, and costs; and further proceedings under the execution must be restrained.

I shall therefore decree that the preliminary injunction awarded by my predecessor in office be made perpetual.

Let a decree be drawn accordingly.