# Stoddart, Appellant, *v.* Myers.

*Building and loan associations—Mortgage—Stock—Usury—Interest—Assignment of stock—Conflict of laws—Foreign association.*

1. Where a bond and mortgage of land in Pennsylvania to a building and loan association of Virginia, is executed in the District of Columbia, and recites that it is to be construed according to the law of Virginia, and a scire facias is brought upon the mortgage in Pennsylvania, the courts of the latter state will assume in construing the bond and mortgage that the laws of Virginia are the same as the laws of Pennsylvania, if there is no proof offered to the contrary. If in such a case it appears that the mortgage was given as security for a loan, that the loan was made to a mortgagor without competitive bidding, that a premium was charged therefor, and that the interest and premium was an excess of legal interest, the whole contract is usurious.

2. A contract of appropriation of dues made prior to insolvency whether by assignment of the stock or otherwise, is within the right of the borrower, and the dues must be so credited.

3. Where a member of a building and loan association makes an absolute assignment of his shares to the association, and the assignment recites that the shares are "redeemed," and at the same time the member executes a bond and mortgage to secure money advanced by the association to redeem the shares, and the mortgage recites that the advancement is made for the redemption of the shares, all interest, dues and premiums paid thereafter are applicable to the payment of the bond and mortgage. The assignor of the stock ceased to be a shareholder as soon as the assignment was made.

Appeal, No. 231, Oct. T., 1912, by plaintiffs, from judgment of C. P. Clearfield Co., Sept. Term, 1910, No. 113, for defendants on case tried by the court without a jury in suit of Josiah C. Stoddart and Douglas Stuart, Receivers of the Washington National Building and Loan Association, *v.* Moses D. Myers and Amanda Myers. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Scire facias sur mortgage.

A. O. Smith, P. J., filed the following opinion:
The action in this case is a scire facias sur mortgage to

foreclose a building and loan association mortgage in the sum of $800 which was submitted to the president judge of the court, to be tried by him without a jury, under the provisions of the Act of Assembly approved April 22, 1874, P. L. 109.

Said case was heard on testimony and argument July 8, 1912. From the documentary evidence submitted at that time, as also from the admissions of counsel duly made in said case the following facts appear

### FINDINGS OF FACTS.

1. The corporation plaintiff, for which J. C. Stoddard and Douglas Stuart are receivers, is the Washington National Building and Loan Association of Washington, D. C., a corporation duly chartered under the laws of the state of Virginia; its central office was in the city of Washington, District of Columbia, and all of its business was there transacted from the time of its organization down to the time when said receivers were appointed.

2. Said Moses D. Myers and his wife, Amanda Myers, are residents of the county of Clearfield, Pa., and said Moses D. Myers subscribed for and became the owner of eight shares of stock of the par value of $100 each in said association, which said certificate of stock was duly issued to him bearing date the     day of        , 1898.

3. The said Moses D. Myers made application to the said Washington National Building and Loan Association of Washington, D. C., for a loan or advancement of $800, which application was duly made by him on September 26, 1898, on the blank printed forms of said association for that purpose intended and which application states, inter alia, that he desired to secure said advancement on eight shares of said association stock on the 144 month plan, and that he "bid a premium of     cents per share on each $100 so advanced, as provided by the terms and under the rules and regulations of said association," and that he tendered as security therefor a bond and mortgage, or deed of trust on real estate therein described, situate in

the borough of Osceola, Clearfield county, Pennsylvania, consisting of a house and lot 75 x 150 feet on Sarah and Stone streets, in said borough.

4. Said application was made and executed in Clearfield county, on the said September 26, 1898, duly sworn to by said applicant, and was by him forwarded by mail to the association at Washington, D. C. Neither the said Moses D. Myers nor Amanda Myers, his wife, ever attended any meeting of the association at Washington, D. C., and that no bid was made by them as a premium for said money at the time the loan in question was granted, as is shown by the unfilled blank in the application made to the association for the loan in this case.

5. Said association made an advancement or loan of $800 to said Moses D. Myers and received from him, duly executed by him, a bond in said sum, and a mortgage as security for said bond signed by said Amanda Myers and Moses D. Myers, under date of October 1, 1898; the bond being in the penal sum of $1,600, conditioned for the payment of the sum of $800, "this day advanced to the said Moses D. Myers by said association for the redemption of eight shares of half rate stock of the sixty-seventh series therein (now owned by the said Moses D. Myers), as follows: First, as dues the sum of thirty cents per share on each and every of said shares of stock monthly, on or before the last business day of each and every month hereafter. Second, at the same date, interest on said advancement at the rate of fifty cents per share on each and every of said shares of stock for the first year from the date hereof, and for each year thereafter a monthly premium of ten per cent. thereof, less than the year next preceding, the same being the premium bid for said advancement, and such fines, charges and assessments as may be imposed thereon, under the charter by premiums and assessments on the real estate given as security for the faithful performance of the conditions of this bond, until such time as said share of stock shall be fully paid up and shall faithfully perform all other obligations to the

said association as provided and imposed by and in pursuance of said charter, by-laws and regulations and any amendments thereto. Provided, however, that no payments on account of stock or premiums shall be exacted for a longer period than 144 months from the date of such stock and should said shares of stock fail to mature on or before the expiration of said period of 144 months, then six per cent. per annum on the original amount advanced thereon shall continue and be paid in monthly installments until said stock shall mature, when all payments shall cease and the mortgage securing this bond be cancelled."

6. The mortgage accompanying said bond gives the name of the mortgagee as follows: "The Washington National Building & Loan Association of Washington, D. C. (a body corporate under the laws of the State of Virginia, under and subject to which laws these presents are executed)." After which it recites the existence of said bond and the terms thereof as set out in the above finding, and in addition thereto has this further clause at the end of said mortgage, namely, "and it is further understood and agreed by and between all the parties hereto, that this deed as well as the bond hereinbefore mentioned is a Virginia contract, and is, and shall be, in all respects governed by the Laws of the said State of Virginia."

7. On the same day that the said bond and mortgage were executed the said Moses D. Myers made an assignment of stock on the back of said bond, in the following language: "For value received, I, Moses D. Myers, hereby assign to the Washington National Building & Loan Association of Washington, D. C., eight shares of stock therein this day redeemed at one hundred dollars per share. Witness my hand and seal this first day of October, 1898. Moses D. Myers (Seal)." It is also admitted for the purpose of this case that said Joseph D. Myers signed a blank form of assignment, undated, printed on the back of the certificate of stock issued to him by said association which said assignment constitutes a single transaction

with the assignment quoted above indorsed on the back of the bond.

8. The pass book of the defendant, receipted therein by officers of the association, as also the "loan card" of the association offered in evidence, show that the first payment on account of dues, premium and interest was made on October 6, 1898, and that such payments continued to be made as required by the terms of the mortgage until the payment for June, 1908, a period of 117 months, which is the last payment credited as shown by the pass book of the defendant.

9. On July 1, 1909, the corporation court of the city of Alexandria, Virginia, appointed Josiah C. Stoddard and Douglas Stuart, receivers of the Washington National Building & Loan Association of Washington, D. C., and on August 14, 1909, the said Stoddard and Stuart, respectively, were also appointed ancillary receivers by the court of common pleas of Fayette county, Pennsylvania.

10. The said receivers have proceeded in the court of common pleas of Clearfield county, to the above stated number and term, by scire facias sur mortgage, to collect from said defendant the sum of $904 with interest on $800, the principal thereof, from the first day of July, 1910, on the following statement of account:

### Charges

| | |
|---|---|
| Amount of loan. . . . . . . . . . . . . . . . . . . . . . . . | $800.00 |
| Interest to July 1, 1910, 141 mos. . . . . . . . . | 564.00 |
| | $1,364.00 |

### Credit

| | |
|---|---|
| Interest paid for 115 mos. . . . . . . . . . . . . . . | $460.00 |
| Balance . . . . . . . . . . . . | $904.00 |

Interest from July 1, 1910

11. There is nothing offered in the case going to show the value of the eight shares of stock originally issued to

the defendant by the association, as of June, 1908, at which time he ceased paying any installments either on account of dues, interest or premium, and which was a year prior to the time of the appointment of the receivers. The deposition of Josiah C. Stoddard, one of said receivers and former secretary of the association, was taken on behalf of the plaintiff, on interrogatories and cross interrogatories from which it would appear, as claimed, that there were no other books of account kept than the loan card offered in evidence, and that there was no such account kept as would show the value of the stock of the defendant at the time when he ceased paying, or at any other time. The claim of the plaintiffs appears in an affidavit of Douglas Stuart, one of said receivers, attached to said loan card, to the effect that "the said stock had not reached its maturity value at the time of the appointment of the receivers and can now never be matured, as the association has gone into the hands of the receivers for winding up."

12. No statutes or decisions of the state of Virginia were offered in evidence so as to indicate the law controlling building and loan associations chartered by said state.

13. A careful calculation of the debt and interest, with credits of the payments made by the defendant to the plaintiff association, of dues, premium and interest, on the principle of partial payments indicates that the said debt and interest was paid in full on or before July, 1908, and that said defendant in a calculation on the principle of partial payments does not now owe anything on account of said mortgage.

### CONCLUSIONS OF LAW.

The following is believed to be the law governing and controlling the decision in this case:

1. The bond and mortgage having designated that said contract shall be governed by the laws of the State of Virginia, in which said state the plaintiff corporation was chartered, determines the construction of the contract

between the parties and that the law of the state of Virginia must be recognized in this court as controlling the construction of the contract in all matters relating to the status of the association with respect to its stockholders whether borrowers or nonborrowers.

2. There being no evidence offered in this case to show either the statutes or decisions of the state of Virginia, respecting the law of building and loan associations and its relation to stockholders, the presumption in the trial of the case is that said laws are to be construed the same as the laws of Pennsylvania, the forum of trial in this case.

3. The mortgage itself being a conveyance of real estate in Pennsylvania as security for a debt, the legality of its execution, the extent and character of the lien created, as well as the construction of the instrument, must be governed by the law of Pennsylvania.

4. Under the law of Pennsylvania this mortgage having been given as security for a contract of loan or advancement made to him by said plaintiff, which loan or advancement was made by said association without competitive bidding for the money loaned or advanced, and as the charge of lawful interest plus the premium constitutes a sum in excess of the legal interest allowed by the state, the whole contract is usurious and establishes the status of defendant and plaintiff, respectively, as debtor and creditor.

5. The evidence in this case showing an absolute assignment by the defendant to the plaintiff corporation of his stock in said corporation, and also showing the clear intent and purpose of the parties to appropriate payments on account of dues, premium and interest on the loan, and also showing the plaintiff corporation is now insolvent, in the hands of a receiver, and unable to carry out its part of the contract, we hold it to be the law that in a foreclosure proceeding on the mortgage given as security for the performance of his contract, the burden of proof is upon the plaintiff to show the value of the stock at the time when said defendant ceased paying on account

thereof, in this case over a year prior to the appointment of the receivers as a condition precedent to the right of the plaintiff to recover. Having failed to produce one notice or in depositions the books and accounts of said association so as to show the status of said stock, the receivers should not now be allowed to recover on any other basis than that of debtor and creditor or mortgagee and mortgagor.

6. The assignment of the stock by the defendant to the plaintiff association is absolute in form and there is nothing either in the by-laws of the association or in the evidence taken to show the status of the parties to indicate that it is any other than an absolute assignment and not a collateral undertaking.

7. The language of the bond and mortgage to the effect that the money advanced to defendant by said association was for the redemption of eight shares of "half rate stock" as also the language of the assignment, which assigns to plaintiff association, "8 shares of stock therein this day redeemed at one hundred dollars per share," is conclusive evidence of the purpose and intention of the parties to make the assignment of stock absolute, so that the defendant at no time thereafter could or would be considered as a stockholder in said association with right to participate in the profits of said stock.

8. The proviso clause of the bond and mortgage which reads: "That no payment on account of stock or premiums shall be exacted for a longer period than one hundred and forty-four months from the date of such stock, and should said shares of stock fail to mature on or before the expiration of said period of one hundred and forty-four months, then six per cent per annum on the original amount advanced thereon shall continue and be paid in monthly installments until said stock shall mature, when all payments shall cease and the mortgage securing this bond be cancelled," together also with the second proviso, "that if at any time default be made and three consecutive months are suffered to elapse

without paying up all installments of interest, premium and monthly dues on said stock and all fines for non-payment thereof, as aforesaid, or any or either of them, then and in such case the credit given on said advancement shall cease and determine, "is conclusive evidence of the intention of both parties to the contract at the inception of the loan that all payments, whether dues, interests or premiums were to be and were applied to the extinguishment of the loan or advancement and operated as a cancellation of the mortgage.

9. Under the law governing this contract all that could have been collected at any time was the principal debt, with lawful interest, less all payments whether made as dues, premium or interest, and as under the evidence in this case, on the principal or partial payments, the defendant has paid more than sufficient to wipe out the debt and interest created by said mortgage he is not now liable for any further payments on account thereof, and judgment must be entered for the defendant.

### DISCUSSIONS OF LAW AND FACT.

The first principal question raised in consideration of this case is as to the law governing the contract. In the absence of any stipulation to the contrary, the law of the place where the contract was executed is presumed to be the law controlling the contract. This principle, however, does not apply where the contract shows it was to be performed in another jurisdiction, in which case the presumption arises that the law of that jurisdiction should control the construction of the contract, and not the law of the place of execution. Both of these principles are, however, founded on the doctrine of presumption in the absence of express contract. Parties have a right to definitely contract as to the law which shall govern the construction of that contract, and when such designation occurs the law of the designated place must govern. In this case the learned counsel for the defendant strongly contended that such designation could

not be in a jurisdiction entirely foreign to both the place of execution and the place of performance. We are, however, unable to sustain this contention and do not find that it is sustained by authority. We believe, therefore, that while it is clear that the place of performance of this contract was in the city of Washington, District of Columbia, and that the law of the District of Columbia would control in the absence of another designated jurisdiction, yet where, as here, that other jurisdiction is designated, the courts are bound to recognize the law of that jurisdiction as controlling the construction of the contract.

In this case the plaintiff seeks to avoid the construction of such contracts as laid down by the courts of the District of Columbia.

These decisions show that there could be no recovery in the courts of the district on the contract in question: Middle States Loan Bldg. and Construction Co. v. Baker, 19 App. D. C. 1; Washington National Building and Loan Association v. Fiske, 20 App. D. C. 514; Croissant v. Empire State Realty Co., 29 App. D. C. 538; Washington National Building and Loan Association v. Pifer, 31 App. C. D. 434.

As the bond and mortgage in this case designate that the relation between the parties must be governed by the laws of Virginia, we hold that that designation controls. The laws of another state or of a foreign country must, however, be proved by producing the statutes, official decisions or with the testimony of competent witnesses: Musser v. Stauffer, 178 Pa. 99; s. c., 192 Pa. 398; Bollinger v. Gallagher, 170 Pa. 84–94; Cape May Real Estate Co. v. Henderson, 42 Pa. Superior Ct. 1–6.

In this case there was no evidence offered to show the law of Virginia governing building and loan associations or of their right to charge a premium in addition to legal interest. The forum of trial being Pennsylvania, in the absence of proof as to the law of Virginia, the law of Pennsylvania controls. The legal rate of interest in Pennsyl-

vania is six per cent, and anything over that amount is usurious and illegal. Building and loan associations under our state laws can charge in effect more than the legal rate of interest, but this is based entirely on our acts of assembly, and it is doubtful if they extend to and protect foreign building and loan associations: Land Title & Trust Co. v. Fulmer, 24 Pa. Superior Ct. 256.

To determine whether the charges are usurious or not the premium payment is added to the interest and if in excess of the regular interest is held to be usurious: Land Title & Trust Co. v. Fulmer, 24 Pa. Superior Ct. 256; Klein v. Savings Fund & Loan Association, 216 Pa. 516.

Again it would appear that the defendant in his application did not bid any amount on each share as a premium, although he signed a bond and mortgage, which provided for fifty cents per share per month, as a premium bid. This is positive evidence that in this case it was not a competitive bid and that he was compelled in signing his bond and mortgage to agree to the payment of the fixed sum. Under our Pennsylvania decisions, there being no competitive bidding, the interest is usurious: Land Title & Trust Co. v. Fulmer, 24 Pa. Superior Ct. 256; Klein v. Savings Fund & Loan Association, 216 Pa. 516.

If the law of Virginia is otherwise, it should have been so shown. In the absence of such proof the presumption is that the law is the same in that state as in Pennsylvania. Therefore, in the absence of competitive bidding for the money it is considered a usurious contract and there can be no recovery in this state except on the basis of debtor and creditor, or mortgagee and mortgagor.

There is an additional reason which we think conclusive against the plaintiff. By the law of Pennsylvania, in case of insolvency of a building and loan association, the borrower is ordinarily charged with the loan and interest thereon and credited with interest and premium paid on the principle of partial payments. This leaves payments on account of dues or stock to abide the ulti-

mate liquidation of the insolvent corporation when, if anything is realized, it is paid pro rata to the stock. Our Pennsylvania decisions, however, recognize the appropriation by the borrower of dues on payments on account of stock towards repayment of the loan. Such appropriation, of course, must be made prior to insolvency: Haspel v. Moffitt, 32 Pa. Superior Ct. 344.

Unless there be some evidence of appropriation by the borrower stock payments are not applied to repayment of the loan: Freemansburg Bldg. & Loan Association v. Watts, 199 Pa. 221.

Where there is such an appropriation it cannot be questioned after insolvency: Erthal v. Glueck, 10 Pa. Superior Ct. 402; Hemperley v. Tyson, 170 Pa. 385; York Trust Real Estate & Deposit Co. v. Gallatin, 186 Pa. 150.

A contract of appropriation of dues made prior to insolvency, whether by assignment of the stock or otherwise, is within the right of the borrower, and the dues must be so credited: Kurtz v. Campbell, 31 Pa. Superior Ct. 516, affirmed by the Supreme Court in 218 Pa. 524.

The contract of loan in this case is similar to the contract of loan in Beso v. Eastern Building & Loan Association, 16 Pa. Superior Ct. 222, affirmed in Supreme Court, 201 Pa. 355, where it is held that the mortgage of land in Pennsylvania must be construed under Pennsylvania law. Such mortgage or pledge cannot be held as security for the performance of something for which it was not pledged. If the terms of the contract in this case indicate the appropriation by the defendant of all payments toward the liquidation of the mortgage it is clear in the light of the Pennsylvania authorities that this defendant is entitled to judgment at the hands of the court. He is not now a member of the association and has not been since the inception of this loan. The bond and mortgage recites that the money is advanced to "redeem" the stock. Redemption is defined as a repurchase, a ransom, a release, a recovery or a reclamation. The "redemption" of defendant's stock by the plaintiff corporation was,

therefore, a repurchase or reclamation, and left nothing in defendant except his obligation to pay under the mortgage. The assignment in form is absolute and unconditional, followed by actual delivery. The case is wholly wanting in evidence to show that the assignments were intended as a collateral security. The transaction, as it appears from the papers, is plain. The association advanced money and "redeemed" the stock subscribed for by defendant, he agreeing to make certain payments monthly as dues, premium and interest, which the assignee estimated would reimburse it. The bond and mortgage is given as collateral security for the payment of these monthly payments of dues, premium and interest. The land of the defendant is, therefore, bound as collateral for his undertaking in this respect. This undertaking was the payment of 144 monthly installments of a certain amount per month, which was carried out by him until the insolvent condition of the plaintiff corporation made it impossible to further comply with its condition. That the assignment cannot be held to be collateral appears also from the significant fact that neither in the application for loan, in the bond and mortgage or in the by-laws of the association is there any rule or condition making the assignment collateral rather than direct or absolute or anything else than it purports to be. If direct and absolute, this defendant is not now a member of the association and is barred from participating in any future distribution. To our mind it is equally clear that the language of the bond and mortgage, in its proviso clauses, constitutes a contract of direct appropriation. The exact period of payment is there fixed, in which respect it differs from nearly all other building and loan associations which provide for payments up to the time of maturity of stock. The contingency of failure to mature at the expiration of the 144 months carries with it only the payment of interest until maturity. Maturity, according to the contract, cancels the mortgage. No option or election is left in the borrower. It is, in fact, self-

192 STODDART, Appellant, v. MYERS.

Opinion of Court below—Opinion of the Court. [52 Pa. Superior Ct.

operative. However much it might be to the advantage of the borrower to continue as a stockholder he does not have the right or option. He ceased, by the assignment, to be a stockholder, and by the terms of the bond and mortgage, he directed the appropriation of the values to their extinguishment. The association also agreed to the appropriation by virtue of its acceptance of the bond and mortgage, as also by its acceptance of the assignment. The defendant in this case fulfilled his part of the contract until the plaintiff, by going into the hands of a receiver, made it impossible to complete his obligation. Moreover, the failure of the plaintiff to keep books of account so as to show the value of each series must be construed against its right to recover. It is the assignee of the stock of defendant and was called on for proof as to the value from the books of the association. Failure to show the books and accounts which would show the value of the stock so assigned, especially where the effort is made to recover more than the face of the mortgage, would clearly be inequitable and work great hardship to defendant who could have no participation in the value of such stock on the winding up of the insolvent estate.

We believe, therefore, that defendant is entitled to judgment, and it is accordingly so ordered.

*Error assigned* was the judgment of the court.

*Singleton Bell*, with him *George W. Zeigler* and *Howard Hartswick*, for appellant.

*W. C. Miller*, with him *Smith V. Wilson*, *Oscar Mitchell* and *John B. McGrath*, for appellees.

PER CURIAM, November 18, 1912:

We are of opinion that the findings of fact of the learned trial judge were fully warranted by the evidence, and that his conclusions of law legitimately followed. We concur in the views expressed by him in his discussion of

the law and facts, and do not deem it necessary to add anything further thereto.

The assignments of error are overruled, and the judgment is affirmed.