## Stoddard, Appellant, *v.* Thomas.

*Building and loan associations—Usurious mortgage—Conflict of laws—Usury—Interest—Assignment of stock.*

Where a building and loan association incorporated under the laws of Virginia, but domiciled and transacting all its business in the District of Columbia takes a mortgage from a member, pay-able in the District of Columbia, the Pennsylvania courts will con-strue the contract according to the laws of the District of Colum-bia, although the mortgage itself provided that it shall be con-strued according to the laws of Virginia. If such a mortgage is invalid under the usury laws of the District of Columbia, it will not be enforced by a Pennsylvania court, although the mortgage is valid under the laws of Virginia.

Where a member of a building and loan association, on borrow-ing money from the association, assigns his stock to the association absolutely, and not as collateral, he ceases to be a member, and any payments subsequently made by him must be applied to the pay-ment of the mortgage and the interest thereon. If such payments amount to the mortgage and interest, the borrower cannot be re-

quired to. make further payments, although the mortgage recited that the money was advanced to "redeem" the stock.

Argued October 29, 1914.. .Appeal, No. 247, October T., 1914, by plaintiffs, from judgment of C. P. Blair Co., March T., 1911, No. 181, for defendants on case tried by the court without a jury in suit of Josiah C. Stoddard and Douglass Stuart, Receivers of the Washington National Building and Loan Association, v. Charles M. Thomas and Nora B. Thomas.    Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.    Affirmed.

Scire facias sur mortgage.

The case was tried by BALDRIGE, P. J., without a jury under the Act of April 22, 1874.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendants.

*John M. Snyder* for appellants.—In accordance with the general law, defining lex loci contractus, it is within the power of the contracting parties by the express terms of the contract to establish the place, according to the laws of which the validity and construction of the contract shall be determined: Bank Commissions v. Granite State, 70 N. H. 557; 48 Atl. 1100; Canada Southern R. R. Co. v. Gebbard, 109 U. S. 527; Hawkins v. Glenn, 131 U. S. 319; MacMurray v. Gosney, 106 Fed. R. 11.

The contract is to be construed in accordance with the decisions of the courts of Virginia: Healy v. Eastern B. & L. Assn., 17 Pa. Superior Ct. 385.

The absolute assignment of the stock does not deprive the defendants of the beneficial ownership for the purposes and the theory of and practice in building and loan association loans: Stoddard v. Kline, 51 Pa. Superior Ct. 16.

Under the law of Virginia, there is but one way of putting borrower and nonborrower on an equality so that both share losses and share equally in results, viz; for the borrower to pay his loan and interest less interest paid; and give borrower and nonborrower an equal share in all dividends declared by the court upon insolvency: Campbell v. Building Associations, 98 Va. 729; Peoples B. & L. v. Einsley, 96 Va. 322; Collins v. Wellford, 102 Va. 581.

*Thomas H. Greevy,* for appellee.—After the assignment of the stock defendant was no longer a member of the association.   Stoddart v. Myers, 52 Pa. Superior Ct. 179.

The laws of Virginia do not govern in this case. Washington Nat. B. & L. Assn. v. Pifer, 31 App. D. C. 434.

OPINION BY TREXLER, J., July 21, 1915:

This is one of three appeals now before this court, the receivers of the Washington National Building and Loan Association of Washington, D. C., being plaintiffs in each case and substantially the same questions being involved in each appeal.

There are two reasons in this case, either of which is sufficient to bar recovery.   The first is that the contract is a District of Columbia contract and under the laws of said District is usurious.   The amount for which the mortgage was given in this suit was $1,000.   The defendants have already paid to the association the sum of $1,482, being $293.70 in excess of the principal and legal interest.   The receivers now seek to compel them to pay $1,165.50 in addition to the above sum.   The plaintiff association is a Virginia corporation and in the mortgage upon which suit is brought, it is provided that the laws of the State of Virginia shall govern. When parties provide expressly that a contract shall be governed by the laws of a particular state, the courts

will ordinarily carry out such provisions.   A number of authorities in support of this position are cited and referred to in 9 Cyc. p. 665, and 22 Am. & Eng. Ency. of Law (2d Ed.), p. 1235.   It appears that although this is a Virginia corporation, its principal office is in the City of Washington where its books and accounts are kept, where its officers reside, and where under the by-laws all sums due under the mortgage from time to time were payable.   In other words, although it received its charter rights from the State of Virginia, its actual domicile was in the District of Columbia.   Under these identical facts the Appellate Court of the District of Columbia in the case of Washington National Building and Loan Association v. Pifer, 31 App. D. C. 434, held that the contract or mortgage sued on should be construed according to the laws of the District of Columbia and as the laws of the District of Columbia made the contract usurious, there could be no recovery.   We quote from the opinion of said court, "It is obvious that this building and loan association obtained a charter in Virginia not with any idea of locating in that state, but with the definite and distinct idea and intention of locating in the District of Columbia, hence its name, the "Washington National Building and Loan Association" of Washington, D. C.   Its principal office has already been located here, its books have been kept here, its officers have lived here, and its business has been transacted here.   It is manifest, therefore, that the attempt on the part of the association to stipulate against the laws of its domicile must be held to be futile and against the public policy of the jurisdiction: Natl. Mutual B. & L. Assn. v. Brahan, 193 U. S. 635; N. Y. Life Ins. Co. v. Cravens, 178 U. S. 389; American Freehold, Etc., & Mortgage Co. v. Jefferson, 69 Miss. 770." Had the money been payable to the plaintiff in Virginia, then an entirely different state of affairs would be present. See Bennett v. B. & L. Assn., 177 Pa. 233; Healy v. B. & L. Assn., 17 Pa. Superior Ct. 385. In these cases

the certificate of membership contained the express stipulation that all payments were to be made at the home office of the association in Syracuse, N. Y., hence the law of that state governed. No one questions the right of a corporation, such as an insurance company for example, to provide that its policies although issued to a person in another state shall be governed by the laws of the state of its residence. On the other hand, the mere designation by the parties that the laws of some other state shall govern when neither the place of the making of the contract nor the place of its performance is in such designated state is not sufficient to bring such contract under the laws of such state when the evident purpose is to escape the effect of the statutes of the state in which the parties are when the contract is made. If this were not so, the usury laws and many others which might be mentioned would be of no effect, and could be evaded with impunity. In the case before us we have the provision that the Virginia laws shall govern, but we have also in the by-laws of the association the requirements inconsistent with the above that all payments, "to and from the association, shall be payable at its central office in Washington, D. C." As between these two provisions, under the facts as they appear, the place of payment must govern. A person may contract to pay at the rate of interest of the place of the contract or the place of performance unless the place is fixed to escape the usury laws: Miller v. Tiffany, 1 Wallace 298, but the general principle is that the contract is to be governed by the law of the place of performance: Andrews v. Pond, 13 Peters 67. In Guarantee S. L. & I. Co. v. Alexander, et al., 96 Fed. Repr. 870, a mortgage made in South Carolina, payable to a building association chartered in West Virginia, but having its principal office in the City of Washington, was held to be governed by the laws of the District of Columbia. When the parties to this contract provided that the payments under the mortgage

should be made in the District of Columbia, and it appears that the actual domicile of the corporation was there, they put themselves under the laws of said District and were bound by them. As was stated in the opinion in Assn. v. Pifer, supra, "the place provided for payment is therefore sometimes of controlling importance when the question in controversy relates to the rate of interest." A number of cases in different jurisdictions involving the same question have been passed upon by the federal courts and with great uniformity they hold that the law of the state of the domicile of the corporation where the contract was to be performed should govern its construction.

The second fact which prevents recovery is that when the borrower received the loan, he assigned his stock to the association absolutely. It was not assigned as collateral. He parted with his title entirely. He then ceased to be a member of the association. The relation between him and the association was that of debtor and creditor. The payments he made should be applied to the payment of the mortgage and the interest thereon and thus applied, he had not only paid in full, but overpaid. The words employed in Stoddart v. Myers, 52 Pa. Superior Ct. 179, apply, "He is not now a member of the association and had not been since the inception of the loan. The bond and mortgage recites that the money is advanced to 'redeem' the stock. Redemption is defined as a repurchase, a ransom, a release, a recovery or a reclamation. The 'redemption' of defendant's stock by the plaintiff corporation was, therefore, a repurchase or reclamation, and left nothing in defendant except his obligation to pay under the mortgage. The assignment in form is absolute and unconditional, followed by actual delivery." As pointed out by the court in the above case, the language of the bond and mortgage constitutes a contract of direct appropriation. The exact period of payment is there fixed in which respect it differs from nearly all other building

and loan associations, which provide for payment up to the time of maturity of stock. The contingency of failure to mature at the expiration of the 144 months carries with it only the payment of interest until maturity. Maturity according to the contract, cancels the mortgage. No option or election is left to the borrower. The defendant by the assignment ceased to be a stockholder and by the terms of the bond and mortgage he directed the appropriation of the values to their extinguishment. The association accepted the bond and mortgage and the assignment.

The contract being usurious according to the laws of the place of performance of the contract, nothing can be required of the defendant but the payment of his loan with legal interest. The borrower not being a member of the association, having surrendered his shares of stock, all moneys paid by him to the association, he was entitled to have credited upon his loan obtained from the association.

There was no competitive bidding for the money when the loan was made and the lower court found that this was contrary to law and therefore prevented recovery. In view of the position we have taken above, we need not discuss this question.

The assignments are overruled and judgment affirmed.