## Graham v. Mt. Airy Building and Loan Association.

*George Gowen Parry*, for plaintiff; *George Hart*, for defendant.

BROWN, JR., J., May 28, 1930.—This action is to recover damages for defendant's failure to satisfy a mortgage, which it held on plaintiff's property, in accordance with the provisions of section 10 of the Act of May 28, 1715, 1 Sm. Laws, 96, 1 Purdon, 1186, which is as follows: "And if such mortgagee by himself or his attorney shall not, within three months after, request and tender made for his reasonable charges repair to the said office and there make such acknowledgment as aforesaid, he, she or they neglecting so to do, shall for every such offense forfeit and pay unto the party or parties agrieved any sum not exceeding the mortgage-money to be recovered in any Court of Record within this province by bill, plaint or information."

Following a verdict for the plaintiff in the amount of $678.15, defendant has filed motions for new trial and for judgment *n. o. v.*, contending that the defendant, the mortgagee, did not receive full satisfaction of the mortgage, as required by section 9 of said act, providing as follows: "That any mortgagee of any real or personal estates in this province, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage, shall, at the request of the mortgager, enter satisfaction upon the margin of the record of such mortgage recorded in the said office, which shall for ever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought or to be brought thereupon."

On May 17, 1917, plaintiff purchased No. 5422 Whitby Avenue, Philadelphia, the conveyance being to her and not to her husband, Charles A. Graham. Plaintiff herself had no shares in the defendant building and loan association

at the time, but her husband had five free shares in its 11th series, on which he had been paying for several years and which had a value at the time of $220. On the same day he gave to defendant an *absolute* assignment of "all my right, title and interest in Five Shares of Book No. 1141, Series 11th," of defendant's stock. For this defendant gave a check for $1000 to his order, which was endorsed by him and used in settlement for the mortgage, which subsequently, on May 20, 1917, plaintiff and her husband executed to defendant in the amount of $1000. Thereafter he and plaintiff made monthly payments to the association of $10.50 (some by him, but most of them by plaintiff), of which $5 was "as and for a monthly contribution of Five Shares of the Capital Stock" of defendant "now owned by the said mortgagors," according to provisions of the mortgage (the bond containing a similar provision), until the 11th series of the defendant's stock matured in March, 1925. On Feb. 16, 1925, defendant's secretary wrote plaintiff, telling her of the maturity of the stock at the March meeting, that this maturity would cancel the $1000 loan held on her property, and that if she would sign the enclosed letter of attorney and return it with $2 for recording the satisfaction of the mortgage, the mortgage would be satisfied and all papers returned to her. Thereupon she sent her check for these charges and also letter of attorney to defendant's secretary, authorizing him "to sell, assign and transfer unto the Mt. Airy Building and Loan Association my Five (5) Shares of the Capital Stock of the Mt. Airy Building and Loan Association, Book No. 1141 of the 11th Series." After applying the maturity value of the shares, viz., $1002.95, to the mortgage loan of $1000, there was a balance of $2.95, in which amount, on March 3, 1915, defendant drew its check to the order of plaintiff. However, defendant did not satisfy the mortgage "within three months after request and tender made for his reasonable charges," and has not done so.

Defendant gives as its reason for refusing to satisfy the mortgage a letter received on or about Feb. 21, 1925, from a member of the bar, purporting to represent plaintiff's husband, in which demand was made that defendant refuse to satisfy the mortgage. Although defendant replied thereto, no further word has been received from or in behalf of plaintiff's husband.

"Payments on the stock [of building and loan associations] are not *ipso facto* payments on the loan, but, except in the case of insolvency, the borrower may apply his payments on the stock to the loan:" Consolidated B. & L. Ass'n *v.* Shipley, 95 Pa. Superior Ct. 232, 237. Where a member of a building and loan association assigns his stock to the association absolutely, and not as collateral, he ceases to be a member, and any payments subsequently made by him must be applied to the payment of the mortgage and interest thereon; and if such payments amount to the mortgage and interest, the borrower cannot be required to make further payments, although the mortgage recites that the money was advanced to "redeem" the stock: Stoddard *v.* Thomas, 60 Pa. Superior Ct. 177; Stoddart *v.* Myers, 52 Pa. Superior Ct. 179.

The bond and mortgage given by plaintiff and her husband provide that they shall pay to the defendant "the sum of five dollars on the first Tuesday of every month, as and for the contribution on the said five shares of stock" of defendant "now owned by said mortgagors [obligors]." However, the shares of stock were never in plaintiff's name. She did not own them originally, and her husband gave defendant an *absolute* assignment of all his right, title and interest therein at the time the mortgage was obtained. The present secretary of the defendant conceded that a mistake was made in not having the shares assigned by the husband to plaintiff, and then by them both to the defendant, it being customary for building and loan associations to require

shares of stock to be owned by the persons who make the loan and an assignment by them to the association. No doubt, if plaintiff and her husband had been so requested, this would have been done. However, it was not. Besides, no collateral note was given, and there was no provision in the assignment as to how or when the shares might be appropriated or applied by the defendant to the repayment of the loan or otherwise. Although defendant's by-laws provide that any member taking a loan "shall assign his stock as collateral security," the assignment by plaintiff's husband is *absolute* in terms. Having executed such an assignment, what right has he to the five shares? In any action brought by him against defendant for the matured value of the five shares of stock the assignment would bar recovery. If he asserted that the assignment was merely as collateral for the mortgage loan, he would be met with the fact that the loan had not been paid, and, therefore, defendant would be entitled to retain the $1000 to pay off this loan. Indeed, defendant's secretary testified, in answer to the question as to "where is the $1000," that it has been "paid to the association. . . . The association took the matured value of that book to discharge a mortgage of $1000. . . . The association got the $1000 and applied it against the mortgage loan." Defendant has thus "received full *satisfaction* and payment" of the mortgage. It seems to us, therefore, in law and in fact, the mortgage should have been satisfied of record.

As to the amount of the verdict, section 10 of the Act of 1715, *supra*, provides that the mortgagee shall pay to the party aggrieved "any sum not exceeding the mortgage money." It is not necessary that the party aggrieved show actual damages: 3 Troubat & Haly's Practice (6th ed.), 2611, note 601. As was said in Henry *v.* Sims, 1 Wharton, 187, 200, where section 14 of the Act of April 13, 1791, 3 Sm. Laws, 32, containing phraseology similar to the Act of 1715, was considered: "There is nothing in the act in question from which it can be even inferred that the amount of the verdict should depend on the damages actually sustained. The object is to compel a man to do a plain act of justice, the omission to do which may be vexatious or injurious to another." Citing this case in Allen *v.* Conrad, 51 Pa. 487, Chief Justice Woodward, in referring to the Act of 1791, said, at page 490: "The statute prescribes no measure [of damages], except as it limits them to not exceeding half of the debt. The court declined to limit the jury to nominal damages, though there was no evidence of special damage. . . . In the instance before us the statutory limit was not transcended; and we have no means of measuring the vexation and inconvenience which the defendant's neglect of a plain duty occasioned the plaintiff, and, therefore, we cannot say that the damages were excessive."

It is not necessary that defendant's refusal to enter satisfaction shall be "wanton, malicious, obstinate and entirely unreasonable and unjustifiable in any point of view." Such language was used by Mr. Justice Green in Crawford *v.* Simon, 159 Pa. 585, 589, in affirming a verdict *directed* for the plaintiff, but it was by way of comment, as indicated by the following: "It would be difficult to conceive of a case in which they [the penalties of the Act of 1715] could be more deservedly imposed than in this one." The act itself contains no such or indeed any qualification; mere neglect is sufficient. However, the present case was submitted to the jury under the following instruction: "It is only in case you find that there was no controversy, no genuine controversy, that there was no dispute, real dispute, as to what was due between the parties, that the plaintiff would be entitled to recover anything from the defendant because of the refusal to satisfy the mortgage. Consider

whether or not the plaintiff is entitled to a verdict at all at the hands of this association; whether or not there was a real dispute, a real controversy, between the parties as to whether or not this mortgage should have been satisfied. If there was an actual controversy, urged in sincerity, and a *bona fide* demand of legal right, it would relieve the defendant of liability in this proceeding." A similar charge was approved in Steigerwald *v.* Philadelphia Brewing Co., 21 Pa. Superior Ct. 540, 542, in which a verdict for plaintiff in the amount of $650 was affirmed. In this case plaintiff proved actual damages of $250 for counsel fee, $18.15 for costs and $45 for loss of wages by reason of being kept away from her work on account of the issues raised by the defendant.

Defendant's motions for judgment *n. o. v.* and new trial are, therefore, dismissed.