## Frank v. Equitable Credit & Discount Co.

*White & Staples*, for plaintiff.

*Orville Brown*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Secretary of Banking.

*David S. Malis*, for defendant.

GORDON, JR., P. J., March 20, 1942.—This is a bill in equity by a borrower against a lender to compel the surrender to plaintiff of the title papers to an automobile and the cancellation of a bailment lease of the car which had been pledged to defendant as collateral for a loan made in violation of the Small Loans Act of June 17, 1915, P. L. 1012, as amended by the Act of May 28, 1937, P. L. 989. The case is before us upon bill, answer, and proofs. The bill avers that plaintiff had obtained a loan of $205.45 upon the security of his automobile from one C. M. Dashiell of Wilmington, Del.; that in negotiating said loan he delivered the title papers for the automobile to Dashiell, who, in turn, leased it back to him under a bailment lease calling for 18 monthly payments of $16.98 each, or a total of $305.64; that Dashiell was acting as an agent of defendant, and that immediately following the transaction the lease, title, and all other papers connected with the matter were assigned and delivered to defendant; that defendant is a Pennsylvania corporation,

but is not licensed to make loans under the provisions of the Small Loans Act of June 17, 1915, P. L. 1012, as amended; that plaintiff paid $101.88 on account of the loan and thereafter refused to make further payments because of the illegality of the loan under the act; that thereupon defendant threatened to take possession of the pledged automobile under the terms of the bailment lease; and that the said lease provided that it should be construed as though made in the State of Pennsylvania and under the laws thereof. The bill then avers the unlawful character of the transaction under the laws of both Pennsylvania and Delaware, and prays for a decree declaring the transaction unlawful and void, enjoining defendant from assigning the loan and certificate of title, or entering judgment under the lease; and directing the surrender and delivery to plaintiff of the lease and title papers to the automobile.

The answer does not controvert the principal averments of fact of the bill, but denies their legal effect as set forth in the bill and the right of plaintiff to the equitable relief sought, and in addition avers that prior to the commencement of the action defendant, in a letter to plaintiff, voluntarily gave a credit upon the loan to an amount equivalent to the excessive interest and charges thereon.

The Secretary of Banking of the Commonwealth has intervened as a party plaintiff because the suit involves a question of public policy, the enforcement of which is entrusted to him by the act in question.

## Findings of fact

1. On September 15, 1939, plaintiff secured a loan of $205.45 in Wilmington, Del., from one C. M. Dashiell, doing business as the Motor Credit Company, and in making said loan Dashiell was acting as agent or intermediary for defendant.

2. The transaction was made, executed, and deliv-

ered in Wilmington, Del., and the money, $205.45, was paid over to plaintiff at that place.

3. In connection with the said loan, plaintiff executed and delivered to the Motor Credit Company an agreement of bailment lease of plaintiff's automobile, by the terms of which plaintiff agreed to pay to the said company 18 consecutive monthly payments of $16.98 each, beginning October 15, 1939, or a total sum of $305.64. The bailment lease contained a provision for entry of judgment against plaintiff, together with a collection fee of 20 percent, and provided that the lessor might seize the automobile upon a default by plaintiff under the lease. In connection with the transaction plaintiff also executed and delivered a promissory note payable one day after date to the order of Motor Credit Company in the aforesaid amount of $305.64.

4. The bailment lease provided, inter alia, as follows:

"6. It is agreed that this lease and all covenants herein contained shall be binding upon the parties hereto, their and each of their heirs, executors, administrators, successors and assigns, and shall be construed as made in the State of Pennsylvania and subject to the laws of Pennsylvania. This agreement of lease shall be governed by the laws of Pennsylvania."

5. As an additional part of the transaction plaintiff was required to turn over to the Motor Credit Company the certificate of title to his automobile, which certificate now bears a notation that an encumbrance exists thereon in favor of defendant in the sum of $305.64.

6. On the same day, to wit, September 15, 1939, the loan, contract, and all documents and security pertaining to it were assigned to defendant, Equitable Credit & Discount Company.

7. Defendant is a Pennsylvania corporation, having its principal place of business in Philadelphia, but is

not licensed by the Secretary of Banking of the Commonwealth of Pennsylvania to do business under the Small Loans Act of June 17, 1915, P. L. 1012, and its amendments.

8. Plaintiff has repaid on account of said loan a total of $101.88, all of which payments were made prior to April 15, 1940, but has made no further payment thereon.

9. On April 15, 1940, a law firm representing defendant notified plaintiff in writing that his account had been credited with the sum of $71.43, which amount represented interest and charges on said loan in excess of the legal interest rate of six percent, and was said in the notice to have been charged "in excess of the correct amount." Plaintiff had not requested such a credit.

10. Defendant has not sought to enforce the contract by a legal action, but now has possession of the bailment lease, note, and certificate of title aforesaid, which it has refused to surrender until it has been paid the unpaid balance of the principal of the loan less the sum paid by plaintiff, $101.88, on account thereof and the credit of $71.43 voluntarily given by defendant as aforesaid.

11. Under the laws of the State of Delaware said loan was usurious and unlawful as to the excessive interest chargeable thereon, but was recoverable under said law as to the principal and lawful interest.

## Discussion

The first question raised in the consideration of this case is as to the law governing the transaction. In the absence of a stipulation to the contrary, the general rule is that the law of the place where a contract is made governs its construction. The parties to it, however, may agree otherwise, and in the present case it is expressly provided that the agreement is to be construed as though made in the State of Pennsylvania and subject to and governed by the laws of this State.

Although it is unimportant to a decision of the case, it is probable that the parties selected the law of Pennsylvania to govern the transaction because plaintiff borrower was domiciled in Pennsylvania, and because the contract was to be assigned immediately upon its execution to a Pennsylvania corporation and was to be performed here. The rule is well recognized that the parties to a contract may select the law by which they intend to be bound, if the jurisdiction selected is the domicil of at least one of the contracting parties and is that in which the contract is intended to be performed, provided, of course, that the jurisdiction is not selected with an intent to evade some law or public policy of the jurisdiction whose law would ordinarily govern it: Stoddart v. Myers, 52 Pa. Superior Ct. 179, and Stoddard v. Thomas, 60 Pa. Superior Ct. 177.

Although in the form of a bailment lease, the transaction was intended to be, and in fact was, a loan secured by collateral. The amount actually loaned was $205.45, hence, under the laws of Pennsylvania, the loan was subject to the provisions of the Small Loans Act of June 17, 1915, P. L. 1012, as amended by the Act of May 28, 1937, P. L. 989, which requires that the lender be licensed by the Secretary of Banking, and neither defendant nor its agent, Dashiell, held such a license. The act also limits the interest to be charged to a rate lower than that charged for this loan, which was well over 50 percent on the average indebtedness, a rate far in excess of the rates lawfully chargeable under the laws of either Pennsylvania or Delaware.

The Small Loans Act in section 1 declares it to be unlawful to make any loan in an amount of $300 or less, "either with or without security", without first obtaining a license, and in the penal clause, section 6, prescribes various penalties for making loans in violation of its provisions. Paragraph (c) of that section provides:

"No loan of the amount or value of three hundred ($300) dollars or less for which interest, discount fees, charges or consideration greater than six per centum (6%) per annum has been charged, contracted for, or received, except as authorized by this act, wherever made, shall be enforced in this Commonwealth, and the borrower shall not be required to pay any principal, interest or charges whatsoever. This provision shall not apply to loans legally made in any state which then has in effect a regulatory small loan law similar in principle to this act."

This requires an examination of the whole penal section of the act to determine the scope of the clause in question, and whether it is applicable to the situation in the case before us. There is ample authority for the jurisdiction of equity to compel the return of collateral pledged for a usurious loan, if the borrower has repaid the principal of the loan with lawful interest: Roberts v. Pennsylvania Loan & Trust Co., 39 Pa. Superior Ct. 358; Simpson v. Penn Discount Corp. et al., 335 Pa. 172. The passage of earlier small loans acts, which did not contain the penal provision of section 6(c), in no way modified this rule, and it has been generally held, upon broad and fundamental principles of fair dealing, that to obtain such relief from a court of equity the victim of usurious exactions must himself stand ready to do equity, and cannot unjustly enrich himself at the expense of his lender by refusing to pay back the money borrowed. Such a tender was a prerequisite to his right to a return of the collateral: Bassano v. Rutherford National Bank et al., 126 N. J. Eq. 141; Ennis v. Ginn, 5 Del. Ch. 180. With the enactment of section 6(c) in 1937, however, the question has arisen whether this principle can any longer be invoked, in a suit in equity to enforce the penalty, by a borrower who insists upon keeping his adversary's money as well as recovering his collateral. Up to the present time this question does not

appear to have received judicial consideration in this State, and in other jurisdictions, where the same or closely similar acts are in force, the authorities are not in agreement. Thus in Cuneo et al. v. Bornstein et al., 269 Mass. 232, 168 N. E. 810, it was held, in effect, that such legislation expresses a public policy in the suppression of a grave economic evil, and that to refuse to enforce the penalty, even though equity abhors forfeitures and penalties, would seriously weaken the most effective method of accomplishing that object. A similar thought produces the same result in those jurisdictions which pitch their decisions upon the theory that it cannot be said that the borrower does inequity who merely refuses to repay a debt which the law expressly declares to be unenforcible: Davis v. Atlanta Finance Co., 160 Ga. 784; Nash Loan Co. et al. v. Dixon et al., 181 Ga. 297; Thomas v. Burnce, 223 Mass. 311. On the other hand, those jurisdictions that deny equitable relief to the borrower in such circumstances point out that the act does not by its language expressly void a usurious loan, but merely declares it to be unlawful to make such a loan, and prohibits its enforcement by legal process; that the provision in question is purely penal in character and should be strictly and unhesitatingly applied according to its terms, which do not pretend to alter or weaken the fundamental principles of equity jurisprudence: Goodwin Co. v. National Discount Corp., 5 Wash. (2d) 521, 105 P. (2d) 805. On the basis of this approach to the problem a court of equity, which grants relief as a matter of grace, and not of right, and upon equitable principles, will leave the parties where they have placed themselves by their unlawful transaction, and will refuse to allow its process to be used by the borrower to work a wrong to the lender as basic and unconscionable as that which the lender had attempted, and failed, to work upon him.

Much can be said for both of these positions, and the choice between them will probably depend more

upon the exact wording of the statute to be applied, and upon considerations of social philosophy and practical expediency, than upon mere logical reasoning. Some statutes not only expressly declare the usurious small loan void and uncollectible as to both principal and interest, but also, as in New York, vol. 19, McKinney's Consolidated Laws, sec. 377, provide:

"Whenever any borrower of money, goods or things in action, shall begin an action for the recovery of the money, goods or things in action taken in violation of the foregoing provisions of this article, it shall not be necessary for him to pay or offer to pay any interest or principal on the sum or thing loaned; *nor shall any court require or compel the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief to the borrower in any case of usurious loans forbidden by the foregoing provisions of this article.*" (Italics supplied.)

On the other hand, our own act merely declares it unlawful to make such a loan, and provides in its penal clause that it shall not be enforcible as to principal and interest. From this it might be argued that, in framing our act, the legislature intended only to close the door to legal enforcement of the loan by the lender, and not to make the penalty an inducement to obviously inequitable conduct on the part of the borrower. The difficulty with this position, however, is that, by refusing to compel a restoration of the collateral in such circumstances, equity puts it in the power of the lender to set at naught one of the most effective penal safeguards provided by the act for the protection of those who, in their economic distress, are at the mercy of the unconscionable money lender. While outside authority is not in entire accord upon this question, we think those decisions are supported by the better reasoning which most fully effectuate the objects of the provision in question wherever it is clearly applicable to the case in hand; and hence that the equi-

table doctrine that he who comes into equity must do equity does not apply to a proceeding to enforce this penal provision of the Small Loans Act.

This brings us to a consideration of the scope and applicability of section 6(c) of our act. Does it apply to all small loans made in violation of the act, regardless of whether they are made in Pennsylvania or elsewhere? Reading the penal section as a whole, and in the light of other provisions of the act to be noted hereafter, we think clause (c) is clearly intended to apply only to loans made in other jurisdictions on which more than six percent is charged, unless they have been lawfully made in a State which has in effect, for the protection of borrowers, a small loans law similar in principle to that in force here. This clause provides that no loan for $300 or less for which more than six percent is charged "except as authorized by this act, wherever made, shall be enforced in this Commonwealth, and the borrower shall not be required to pay any principal, interest or charges whatsoever", and that "This provision shall not apply to loans legally made in any state which then has in effect a regulatory small loan law similar in principle to this act." Standing alone, the words "wherever made" are, of course, sufficiently broad to include loans made in Pennsylvania as well as elsewhere. Their use, however, in connection with the words that immediately follow, "shall be enforced in this Commonwealth", coupled with the provision that the clause is not to apply to loans legally made in other States, strongly indicates a legislative purpose to confine the operation of this particular provision of the act to loans made outside of Pennsylvania. This conclusion is strengthened when we consider that the second section of the act expressly permits a licensee, who charges or receives interest in excess of that allowed by it, to recover from the borrower the amount actually loaned, with six percent interest, depriving him only of the higher interest which the act

allows a licensee to charge. This is in direct conflict with section 6 (c), and if the latter is to be construed as applying to loans made in Pennsylvania the two provisions would nullify each other. That result is avoided, however, by the operation of the rule of statutory construction which requires conflicting provisions of an act to be given, if possible, a construction that will reconcile and preserve all its provisions.

It is highly improbable that the legislature intended to impose a different and more severe penalty upon the occasional and unlicensed lender, than that visited upon the experienced licensee whose means and opportunities for oppressing necessitous borrowers are wider, and whose moral guilt is therefore the greater. In addition, clauses (a) and (b) of section 6 provide specific penalties of fine and imprisonment for the lending of money in this State in violation of the act by both licensed and unlicensed lenders. Such penalties, however, furnish no protection against usurious loans made in other jurisdictions and sought to be enforced here, and we think clause (c) was enacted as the only practical means of providing protection against the one remaining class of potential usurers who, for jurisdictional reasons, are not subject to the criminal provisions of the act.

This leaves for consideration the question whether the circumstances of the present loan bring it within the operation of section 6 (c). While it is true that the lending contract provided that it should be construed as if made in Pennsylvania and subject to its laws, the loan was actually made in the State of Delaware. For the purpose of interpreting the contract, therefore, the transaction is properly considered as having been made in this jurisdiction. Nevertheless, this would give no justification for a prosecution under clause (a) or (b) for a criminal offense against the laws of Pennsylvania, and clearly brings the transaction within clause (c). As the loan was illegal in the State in which it was made, it will not be necessary to consider whether the

Small Loan Law of Delaware is sufficiently similar in principle to that of Pennsylvania to bring the case within the exception prescribed in the latter part of that clause.

There is no merit in defendant's contention that, by voluntarily giving plaintiff a credit for the excessive interest charged on the loan, defendant thereby purged the transaction of its illegality. The credit was given only after plaintiff had challenged its legality by stopping payments under the contract. The time for repentance had then passed, for it is the making of an illegal loan as well as the actual collection of the usurious interest that is forbidden by the act. Defendant's belated gesture of repentance cannot, therefore, relieve it of the legal consequences of its unlawful conduct. We, therefore, reach the following

### Conclusions of law

1. The transaction of September 15, 1939, between plaintiff and C. M. Dashiell constituted a loan by defendant to plaintiff, by the terms of which defendant is legally bound as though it were the original lender.

2. The terms and conditions of said loan violated the provisions of chapter 100, art. 32, sec. 4045 to 4052, inclusive, and of chapter 77, art. 1, secs. 3101 and 3102, of the Revised Code 1935 of the State of Delaware, being the laws of Delaware relating to small loans and usurious interest.

3. Since, by the terms and conditions of the said loan interest or consideration greater than six percent per annum was charged and contracted for in violation of the laws of the State of Delaware, said loan is illegal and unenforcible in Pennsylvania.

4. Plaintiff as the borrower cannot be required to pay any principal, interest, or charges thereon whatsoever, and said loan is wholly unenforcible.

5. Plaintiff is entitled to have the loan canceled and declared void and unenforcible, to demand of defendant a return of all the writings, papers, and documents

evidencing or securing the same, and to a decree enjoining and restraining defendant from endeavoring to enforce said loan in any manner whatsoever in the Commonwealth of Pennsylvania.

Accordingly we enter the following

### Decree nisi

And now, to wit, March 20, 1942, this case having come on to be heard upon bill, answer, and proofs, upon consideration thereof it is ordered, adjudged, and decreed:

1. Defendant be and it is hereby permanently enjoined and restrained from assigning, transferring, or otherwise disposing of the bailment lease, note, and certificate of title to plaintiff's automobile, and from entering judgment upon said bailment lease or note for which the same is security, or from otherwise attempting to enforce the same in this Commonwealth.

2. The said bailment lease note be and it is hereby declared void and unenforcible in this Commonwealth.

3. Defendant is hereby ordered and directed forthwith to deliver up to plaintiff the said bailment lease and certificate of title to the said automobile belonging to plaintiff, and all other papers and documents evidencing or relating to said transaction.

4. Defendant shall pay the costs of this proceeding.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and, unless exceptions thereto are filed within 10 days, either party may present to the court a form of final decree to be entered in the case.